22-1268-cr
*United States v. McAdam*

# United States Court of Appeals
## For the Second Circuit

August Term 2024

Argued: September 16, 2024
Decided: January 28, 2026

No. 22-1268-cr

---

UNITED STATES OF AMERICA,
*Appellee*,

*v.*

ROBERT MCADAM,
*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Northern District of New York
No. 1:21CR00398, Mae A. D'Agostino,
*Judge*.

---

Before:     LYNCH, PÉREZ, and MERRIAM, *Circuit Judges*.

Robert McAdam was convicted of one count of travel with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. §2423(b).  On appeal, McAdam challenges four discretionary conditions of supervised release imposed as part of his sentence.  Two of those conditions, Conditions 14 and 15, were imposed pursuant to "General Order #23," a standing order that, at the time of

McAdam's sentencing, required district courts in the Northern District of New York to impose fifteen conditions of supervised release as "standard conditions" in all cases imposing a term of supervised release. McAdam contends that Conditions 14 and 15 were improperly imposed because (1) the District Court failed to orally pronounce them at his sentencing hearing, and (2) the District Court failed to make an individual assessment of the need for the conditions and to articulate on the record its reasons for imposing the conditions. Because we conclude that the District Court erred by imposing Conditions 14 and 15 without making the required individualized assessment and articulating on the record its reasons for imposing the conditions, we need not decide whether the District Court failed to orally pronounce the conditions.

McAdam also challenges the imposition of two special conditions, Special Conditions 7 and 9, included in his written judgment. Special Condition 9 prohibits McAdam from accessing adult pornographic materials, and Special Condition 7 requires him to submit to internet monitoring and allows the probation office to limit him to using one personal internet-capable device. We conclude that the District Court did not err by imposing those conditions, and we therefore affirm them, except for the portion of the internet-monitoring condition allowing the probation office to limit McAdam to a single device, which the parties agree was in error. Accordingly, we amend the written judgment by striking the final sentence of the internet-monitoring condition and otherwise affirm the District Court's imposition of the special conditions.

We therefore **VACATE** two of the discretionary conditions of supervised release imposed in the judgment. We **AFFIRM** the imposition of the pornography condition and **AFFIRM AS MODIFIED** the imposition of the internet-monitoring condition, amending the written judgment to strike the last sentence of that condition. We **REMAND** this matter to the District Court for further proceedings in accordance with this opinion.

Peter J. Tomao, Law Office of Peter J. Tomao, Garden City, NY, *for Defendant-Appellant*.

Rajit S. Dosanjh, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee.*

2

SARAH A. L. MERRIAM, *Circuit Judge*:

Robert McAdam was convicted of one count of travel with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. §2423(b). On appeal, McAdam challenges four discretionary conditions of supervised release imposed in the judgment entered May 31, 2022 (D'Agostino, *J.*). Two of those conditions, Conditions 14 and 15, were imposed pursuant to "General Order #23," a standing order that, at the time of McAdam's sentencing, required district courts in the Northern District of New York ("NDNY") to impose fifteen conditions of supervised release as "standard conditions" in all cases imposing a term of supervised release. McAdam contends that Conditions 14 and 15 were improperly imposed because (1) the District Court failed to orally pronounce them at his sentencing hearing, and (2) the District Court failed to make an individualized assessment of the need for the conditions and to articulate on the record its reasons for imposing the conditions.

McAdam also challenges the imposition of two special conditions, Special Conditions 7 and 9, included in his written judgment. Special Condition 9 prohibits McAdam from accessing adult pornographic materials, and Special Condition 7 requires him to submit to internet monitoring and allows the

3

probation office to limit him to using one personal internet-capable device. We

conclude that the District Court did not err by imposing those conditions, and we

therefore affirm them, except for the portion of the internet-monitoring condition

allowing the probation office to limit McAdam to a single device, which the

parties agree was in error. Accordingly, we amend the written judgment by

striking the final sentence of the internet-monitoring condition and otherwise

affirm the District Court's imposition of the special conditions.

We therefore **VACATE** two of the discretionary conditions of supervised

release imposed in the judgment. We **AFFIRM** the imposition of the

pornography condition and **AFFIRM AS MODIFIED** the imposition of the

internet-monitoring condition, amending the written judgment to strike the last

sentence of that condition. We **REMAND** this matter to the District Court for

further proceedings in accordance with this opinion.

## BACKGROUND

On November 22, 2021, McAdam pled guilty pursuant to a plea agreement

to a one-count Information charging him with travel with the intent to engage in

illicit sexual conduct, in violation of 18 U.S.C. §2423(b). In preparation for

sentencing, the government and McAdam filed sentencing submissions, none of

4

which discussed any potential conditions of supervised release.  The probation

office prepared a pre-sentence investigation report ("PSR"), which addressed

conditions of supervised release and recommended nine special conditions.  The

PSR did not mention any conditions of supervised release other than those

special conditions.

At the sentencing hearing on May 25, 2022, the District Court sentenced

McAdam principally to 46 months of imprisonment to be followed by fifteen

years of supervised release.  Upon imposing the term of supervised release, the

District Court stated:

> While on supervised release, you shall not commit another federal,
> state, or local crime.  You shall comply with the standard conditions
> that have been adopted by this Court, and you shall comply with the
> special conditions that have been attached to the Presentence
> Investigation Report in advance of sentencing.

App'x at 89-90.  The District Court said nothing more about the "standard

conditions."[1]

The District Court then made the following oral findings regarding the

---

[1] We refer to the conditions imposed by the District Court pursuant to the NDNY's
General Order #23 as "standard conditions" only because the District Court used
that term.  As will be discussed in detail below, none of the challenged conditions
in this appeal is a "standard condition."

need for the special conditions recommended in the PSR:

> The Court finds these special conditions are necessary and justified in this case based upon the nature of the instant offense as well as the history and characteristics of the defendant as outlined in detail in the presentence report and to promote the rehabilitation of the defendant. . . .
>
> The nature of the instant offense involved the defendant traveling from Vermont to New York to have sexual intercourse with an individual he believed to be a 15-year-old female. The Court finds special conditions 2 through 7 are necessary in order to protect the public from further crimes of the defendant. The Court finds special conditions 1, 7, and 9 are necessary to promote the rehabilitation of the defendant.
>
> Based upon the nature of the instant offense, the Court finds special conditions 8 and 9 are the least restrictive conditions necessary in lieu of a complete internet ban to protect the public from further crimes of the defendant. Due to advancing technology, the Court notes it is unlikely that upon defendant's release, he will encounter employment, if he were to become employed again, which does not somehow allow him to access a computer.

App'x at 90-91.

Neither party objected to the sentence as orally imposed.

The written judgment imposed a total of 28 conditions of supervised release, including four mandatory conditions, each required by 18 U.S.C. §3583(d), and 24 discretionary conditions – fifteen conditions that the judgment identified as "standard conditions" and the nine "special conditions" discussed in the PSR. *See* App'x at 12-14.

6

The fifteen "standard conditions" imposed in the written judgment were not mentioned in the PSR. They were identical to the conditions listed in General Order #23. *See* App'x at 102-03. The first thirteen of these "standard conditions" closely track the language of the standard conditions set forth, at the time of sentencing, in Section 5D1.3 of the United States Sentencing Guidelines.[2] The remaining two – Conditions 14 and 15 – are *not* identified as "standard conditions" in Guidelines Section 5D1.3. Of the purportedly standard conditions, McAdam challenges only Conditions 14 and 15.

Condition 14 states: "You must provide the probation officer with access to any requested financial information." App'x at 13.

Condition 15 states:

> You must submit your person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any

---

[2] When McAdam was sentenced, the Guidelines Manual listed certain conditions as "standard conditions" in Section 5D1.3(c). *See* U.S.S.G. § 5D1.3(c) (effective November 1, 2021) (hereinafter, "2021 Manual"). "Special conditions" were listed in Section 5D1.3(d). The revised Guidelines Manual effective November 1, 2025, substantially revises those subsections. Significantly, the Sentencing Commission has (1) emphasized that all the conditions described as standard and special are *discretionary* and (2) clarified that imposition of *any* of them requires "an individualized assessment." U.S.S.G. §5D1.3(b)(1) (effective November 1, 2025) (hereinafter, "2025 Manual").

other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you. Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

App'x at 13.

McAdam also challenges the imposition of Special Conditions 7 and 9.

Special Condition 7 states:

You shall not use or possess any computer, data storage device, or any internet capable device unless you participate in the Computer and Internet Monitoring Program (CIMP), or unless authorized by the Court or the U.S. Probation Office. If placed in the CIMP, you shall comply with all of the rules of the program and pay the costs associated with the program. The U.S. Probation Office may use and/or install any hardware or software system that is needed to monitor your use of a computer or internet capable device. You shall permit the U.S. Probation Office to conduct periodic, unannounced examinations of any computer equipment, including any data storage device, and internet capable device you use or possess. This equipment may be removed by the U.S. Probation Office or their designee for a more thorough examination. You may be limited to possessing one personal internet capable device to facilitate the U.S. Probation Office's ability to effectively monitor your internet related activities.

App'x at 14.

Special Condition 9 states:

While in treatment and for the remainder of the term of supervision following completion of treatment, you shall not view, possess, own,

subscribe to or purchase any material, including pictures, videotapes, films, magazines, books, telephone services, electronic media, computer programs, or computer services that depict sexually explicit conduct, as defined in 18 U.S.C. §2256(2).

App'x at 14.

We address each challenged condition in turn, below.

## DISCUSSION

Before turning to the specific conditions challenged by McAdam, we review the law applicable to conditions of supervised release generally.

## I. Conditions of Supervised Release

### A. Mandatory Versus Discretionary Conditions

There are two broad categories of supervised release conditions authorized by the implementing statute: mandatory and discretionary. Section 3583(d) begins by listing a handful of conditions that a "court shall order" in every case. 18 U.S.C. §3583(d). Those are the mandatory conditions. *See United States v. Browder*, 866 F.3d 504, 510 (2d Cir. 2017) ("Under 18 U.S.C. §3583(d), the imposition of certain conditions of supervised release is mandatory . . . ."). All *other* conditions of supervised release are non-mandatory – those are the discretionary conditions. *See United States v. Rogers*, 961 F.3d 291, 299 (4th Cir. 2020) ("Either conditions are mandated by statute, or they are not.").

9

Every discretionary condition of supervised release "is, by definition, optional." *United States v. Maiorana*, 153 F.4th 306, 313 (2d Cir. 2025) (en banc). That is a critical, categorical difference from mandatory conditions: "Mandatory conditions may be imposed without prior notice or pronouncement. Discretionary conditions may not. . . . A discretionary condition, by definition, need not be imposed and, accordingly, can be contested." *Id.*

All discretionary conditions of supervised release require oral pronouncement at sentencing. *See id.* at 314 ("We hold that a sentencing court intending to impose non-mandatory conditions of supervised release . . . must notify the defendant during the sentencing proceeding."). And discretionary conditions may be imposed only if they meet the requirements of 18 U.S.C. §3583(d), as described in the Guidelines:

> Such conditions are warranted to the extent that they (A) are reasonably related to (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (iii) the need to protect the public from further crimes of the defendant; and (iv) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (B) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

10

U.S.S.G. §5D1.3(b)(1) (2025 Manual).[3]

All the conditions challenged in this appeal are discretionary conditions.

**B.      Standard, Special, and Other Discretionary Conditions**

Discretionary conditions can be further broken down into three sub-groups: (1) standard, (2) special, and (3) other.  While the distinction between mandatory and discretionary conditions is governed by statute, these sub-groups are defined by the Sentencing Guidelines and by our precedent.

The Sentencing Guidelines identify thirteen conditions as "standard." U.S.S.G. § 5D1.3(b)(2) (2025 Manual); *see also* U.S.S.G. § 5D1.3(c) (2021 Manual); *United States v. Sims*, 92 F.4th 115, 121 n.3 (2d Cir. 2024) (noting that U.S.S.G. §5D.3(c) "lists thirteen standard conditions").  Prior to November 1, 2025, the Guidelines "recommended" the imposition of the standard conditions.  U.S.S.G. §5D1.3(c) (2021 Manual).  The 2025 Manual, however, does not recommend the standard conditions, but rather indicates that the sentencing court "may modify, expand, or omit" those conditions "in appropriate cases."  U.S.S.G. §5D1.3(b)(2) (2025 Manual).  Under either version, the "standard conditions" are discretionary.  This Court has considered the standard conditions to be "basic

---

[3] The Guidelines in effect at the time of sentencing included similar language.

11

administrative requirements, generally imposed by sentencing courts, and plainly appropriate to implement supervised release." *United States v. Arguedas*, 134 F.4th 54, 69-70 (2d Cir. 2025) (citation modified). But they are not "necessary to every term of supervised release." *Maiorana*, 153 F.4th at 313.

The Guidelines also identify a number of "special conditions" that "may be appropriate in a particular case." U.S.S.G. §5D1.3(b)(3) (2025 Manual). Previous versions of the Guidelines Manual recommended certain special conditions in various circumstances. *See* U.S.S.G. §5D1.3(d) (2021 Manual) ("The following 'special' conditions of supervised release are recommended in the circumstances described."). The current version of the Guidelines removed those recommendations. *See* U.S.S.G. §5D1.3(b)(3) (2025 Manual). Regardless, special conditions have always been discretionary.

Special conditions may be imposed only if they comport with "18 U.S.C. §3583(d)(1) and Sentencing Guidelines §5D1.3(b), which each require, among other things, that the special conditions be reasonably related to familiar sentencing factors, involve no greater deprivation of liberty than is reasonably necessary to achieve those purposes, and be consistent with any pertinent policy statements issued by the Sentencing Commission." *Arguedas*, 134 F.4th at 69

(citation modified).

> A district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error. In the absence of such an explanation, we may uphold the condition imposed only if the district court's reasoning is self-evident in the record. But it is also clear that the conditions must be reasonably related to the sentencing objectives.

*United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018) (citation modified).

Finally, a sentencing court may impose other discretionary conditions. The Sentencing Commission's lists of standard and special conditions are "non-exhaustive," U.S.S.G. §5D1.3(b)(3) (2025 Manual), and "[c]ourts are given broad latitude to design their own special conditions, so long as the courts, among other things, consider the goals of sentencing, including the need for the sentence to provide adequate deterrence, protect the public, and provide the defendant with needed services," *Sims*, 92 F.4th at 120 (citation modified).

As will be discussed further below, none of the conditions challenged in this appeal is a mandatory condition under 18 U.S.C. §3583(d). Further, none of the conditions is a "standard condition" under the Sentencing Guidelines or our precedent. Conditions 7, 9, 14, and 15 are thus all "special conditions." The District Court was therefore required to, among other things, "conduct an

13

individualized assessment and find that [each] special condition is reasonably related to the sentencing factors," "explain its reasoning, which must be supported by the record," and ensure that the condition does "not impose a greater deprivation of liberty than reasonably necessary to accomplish sentencing objectives." *Sims*, 92 F.4th at 123-25. And each of the conditions imposed "must be consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* at 125.

## II.  "Standard" Conditions 14 and 15

The District Court imposed fifteen conditions, including Conditions 14 and 15, that it referred to simply as "the standard conditions that have been adopted by this Court." App'x at 89-90.[4] In other words, the District Court imposed those conditions because it believed they were mandated by the NDNY's General Order #23. However, such "standard conditions" are discretionary; they cannot

---

[4] Because we conclude that the District Court erred by imposing Conditions 14 and 15 without making the required individualized assessment and articulating on the record its reasons for imposing the conditions, we need not decide whether the District Court adequately orally pronounced the conditions. That is, we need not determine whether the District Court's reference to the "the standard conditions that have been adopted by this Court" properly "notif[ied] the defendant during sentencing" of the conditions being imposed. App'x at 89-90; *Maiorana*, 153 F.4th at 314.

14

be mandated. Because those conditions were not actually "standard conditions" but in fact "special conditions," the District Court was required to engage in an individualized assessment of the need for the conditions,[5] and to expressly articulate its rationale for imposing them. It did not do so.

### A. Standard of Review

"This Court generally reviews the imposition of supervised release conditions for abuse of discretion." *United States v. Oliveras*, 96 F.4th 298, 304 (2d Cir. 2024). When a defendant had an opportunity to make objections and "failed to raise them before the district court at sentencing," the Court generally reviews for plain error. *United States v. Dupes*, 513 F.3d 338, 343 (2d Cir. 2008). However, unobjected-to supervised release conditions are reviewed for plain error *only* if the defendant had a meaningful "opportunity to object to them." *Maiorana*, 153 F.4th at 310.

---

[5] Standard conditions now require an individualized assessment as well. *See* U.S.S.G. §5D1.3(b)(1) (2025 Manual) (requiring a court to "conduct an individualized assessment to determine what, if any, [discretionary] conditions of supervised release are warranted," including standard conditions). Although prior versions of the Guidelines did not explicitly require an individualized assessment for any discretionary conditions, our case law interpreted those versions to require an individualized assessment for special conditions. *See Betts*, 886 F.3d at 202.

McAdam did not have a meaningful opportunity to object. Conditions 14 and 15 "were never stated or clearly referenced by the District Court," and, as a result, McAdam could not "object to them at the sentencing hearing or, indeed, at any time before the entry of the written judgment." *Id.* Accordingly, plain error review is not appropriate here. However, even if we were to review for plain error, we would find that the District Court plainly erred, and Conditions 14 and 15 must be vacated.

**B.     Conditions 14 and 15 Are Discretionary Special Conditions**

Conditions 14 and 15 are discretionary special conditions, and General Order #23 cannot convert them into mandatory conditions, in contravention of 18 U.S.C. § 3583(d) and the Guidelines.

When it enacted the supervised release law, "Congress listed certain mandatory conditions for supervised release and authorized district courts to impose other appropriate conditions." *United States v. Spencer*, 640 F.3d 513, 520 (2d Cir. 2011). And when we consider Congress's intent regarding supervised release conditions, "[w]e begin, as in all matters of statutory interpretation, with the text of the relevant statute." *United States v. Francis*, 77 F.4th 66, 71 (2d Cir. 2023). The language of 18 U.S.C. §3583(d) is clear: Congress made only a small

set of conditions mandatory, and the remainder discretionary. Moreover, as discussed above, the Guidelines distinguish between standard and special conditions. *See supra* § I.A. The standard conditions are limited to thirteen specifically identified conditions, and Conditions 14 and 15 are not among them. *See id.*

A standing order cannot alter Congress's determination as to which conditions are mandatory and which are not. Nor can it rewrite the Guidelines to convert special conditions into standard conditions.[6] Yet, General Order #23 does both, requiring sentencing courts in the NDNY to impose Conditions 14 and 15 "as part of each and every term of Probation or Supervised Release in addition to the mandatory conditions required by statute." App'x at 102. That ignores both Congress's clear directive in 18 U.S.C. §3583(d) that only certain conditions are mandatory in all cases and the Guidelines' clear distinction between standard and special conditions. A sentencing judge cannot be forced to impose a *discretionary* condition. Both the statute and the Guidelines prohibit the

---

[6] Indeed, "standard conditions" is a specific term under the Guidelines and our case law, with a particular definition, and it does not include Conditions 14 and 15. *Cf. Irizarry v. United States*, 553 U.S. 708, 714 (2008) ("'Departure' is a term of art under the Guidelines . . . ."). Neither General Order #23 nor an individual sentencing court can unilaterally redefine this well-established term.

17

kind of mandate imposed by General Order #23. Under the statute, a sentencing court may order discretionary conditions of relief only where such conditions are, in the individual case, "reasonably related" to the sentencing factors and "reasonably necessary" to achieve the goals of sentencing. 18 U.S.C. §3583(d). And under the Guidelines as they existed when the District Court sentenced McAdam, a sentencing court had to "make an individualized assessment" before imposing special conditions, such as Conditions 14 and 15, and explain on the record the reasons for imposing such conditions. *See Betts*, 886 F.3d at 202. General Order #23 purports to override these rules and require imposition of certain discretionary conditions. That, it cannot do.

It is well-established that sentencing judges must have discretion to impose any sentence authorized by the relevant statutory scheme and cannot be bound by non-statutory limitations. *See United States v. Booker*, 543 U.S. 220, 233 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *Apprendi v. New Jersey*, 530 U.S. 466, 466-67 (2000) ("While judges in this country have long exercised discretion in sentencing, such discretion is bound by the range of sentencing options prescribed by the legislature."). While General Order #23

does not raise the Sixth Amendment or separation-of-powers issues implicated by the once-binding Sentencing Guidelines, it nonetheless infringes on the sentencing judge's proper authority and discretion. Even the NDNY, acting collectively through a General Order, cannot usurp the *individual* sentencing judge's independence.

Thus, General Order #23 could not mandate imposition of Conditions 14 and 15 on McAdam.

### C. The District Court Failed to Conduct an Individualized Assessment of the Need for Conditions 14 and 15 and Failed to Articulate its Rationale for Imposing Those Conditions

Because Conditions 14 and 15 are special conditions, "[the] district court [wa]s required to make an individualized assessment when determining whether to impose [those] special condition[s] of supervised release, and to state on the record the reason[s] for imposing [them]; the failure to do so [wa]s error." *Betts*, 886 F.3d at 202. The District Court made no assessment whatsoever of the need for these conditions. The error is therefore clear.

We may nonetheless uphold a special condition "if the district court's reasoning is self-evident in the record," and the condition is "reasonably related to the sentencing objectives." *Id.* (citation modified). That is not the case here.

19

As to Condition 14, requiring McAdam to disclose financial information, there is no financial aspect to McAdam's offense or personal history that would support the imposition of a financial disclosure requirement. The government emphasizes that the Guidelines in effect at the time described a financial disclosure condition as "recommended" in cases in which the court has imposed "an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine." U.S.S.G. §5D1.3(d)(3) (2021 Manual).[7] The context of that provision clarifies that financial disclosure may be relevant (and was recommended under previous versions of the Guidelines) in such cases because the defendant owed money as a part of his sentence. *See, e.g.*, *United States v. Brown*, 402 F.3d 133, 137 (2d Cir. 2005) (noting that "we generally have affirmed special conditions mandating access to financial information only in cases where the sentence included a fine or restitution"). That is inapplicable to McAdam. While an order of forfeiture was entered, it was limited to McAdam's cell phone, which was seized by the government at the time of his arrest and never returned. *See* App'x at 104; *cf. United States v. Lewis*, 125 F.4th 69, 75 (2d Cir. 2025) (concluding that the

---

[7] The current version of the Guidelines lists this condition but no longer recommends it in particular cases.

financial disclosure condition was "justified by the need to ensure that [the defendant] complies with the monthly payment schedule for her court-ordered restitution"). And there is no indication in the record that McAdam earned his living through criminal activity that might support such a condition. *Cf. Brown*, 402 F.3d at 137.

As to Condition 15, the District Court's reasons for imposing the condition are not self-evident in the record. There is no indication that McAdam poses a particular risk to reoffend. *Cf. Oliveras*, 96 F.4th at 314 ("[T]he district court justified the Search Condition with its observation that individuals convicted of drug offenses tended to reoffend while on supervised release."). The District Court recognized that McAdam had "not done anything like this before." App'x at 85. He did not obstruct justice or deny the scope and wrongfulness of his actions after his arrest. *Cf. United States v. Rodriguez*, No. 22-3236-cr, 2025 WL 3022141, at *4 (2d Cir. Oct. 29, 2025) (summary order) (upholding search condition because of defendant's "willingness to continue his fraud despite being aware that federal authorities were investigating him"). Moreover, the condition is not self-evidently necessary given the additional, onerous conditions of

21

supervised release to which McAdam is subject.[8]  The government argues that "the Guidelines recommend a search condition that is substantially similar to Standard Condition 15" for defendants convicted of child pornography offenses. Gov't Br. at 50.  That was true at the time of sentencing.  But that alone is not enough to render the condition self-evidently necessary.

In sum, Conditions 14 and 15 were not properly imposed.  The District Court failed to engage in the individualized assessment required for special conditions and failed to articulate the rationale for the conditions.  Accordingly, we vacate Conditions 14 and 15.

On remand, the District Court may consider whether special conditions similar or even identical to those imposed as Conditions 14 and 15 in the original judgment are appropriate.  If the District Court seeks to reimpose Conditions 14 and 15 on remand, it "must conduct an individualized assessment as to whether [each] special condition is reasonably related to the applicable §3553(a)

---

[8] The other conditions of release – including the separately challenged Special Condition 7 – closely restrict McAdam's access to the internet, require that all of his online activity be monitored, allow any electronic device he uses to be searched without prior notice, require him to permit visits by the probation office at any time, subject him to polygraph examinations, and prohibit him from having contact with minors.  *See* App'x at 13-14.

22

sentencing factors and must state on the record the reason for imposing [each condition]." *Sims*, 92 F.4th at 126.

## III.    Special Conditions 7 and 9

We next consider McAdam's argument that the District Court erred in imposing Special Conditions 7 and 9.

### A.    Standard of Review

We review the imposition of Special Conditions 7 and 9 for plain error. As noted, plain error review applies when a defendant had a meaningful opportunity to make objections and "failed to raise them before the district court at sentencing." *Dupes*, 513 F.3d at 343. Special Conditions 7 and 9 were listed in the PSR, and McAdam did not object to those conditions. At sentencing, the District Court confirmed that McAdam had reviewed the PSR "at length" with his attorney.[9] App'x at 70. The District Court read the full text of these conditions into the record at sentencing; again, McAdam did not object. *See* App'x at 93-95. Plain error review therefore applies, and McAdam must demonstrate "(1) an error, (2) that is plain and (3) that affects substantial rights."

---

[9] *See Maiorana*, 153 F.4th at 314 n.12 (2d Cir. 2025) (noting that a defendant would have "a meaningful opportunity to object" to "proposed discretionary conditions [that] are listed in the PSR").

*Dupes*, 513 F.3d at 343. "If these conditions are met, [we] may then exercise [our] discretion to correct the error, but only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* A sentencing court's "failure to explain its rationale" for imposing a special condition "is plain error [where] it is not obvious from the record why such a condition was reasonably necessary." *United States v. Bleau*, 930 F.3d 35, 43 (2d Cir. 2019).

## B. Special Condition 7

Special Condition 7 prohibits McAdam from using or possessing any computer, data storage device, or internet-capable device, without either (1) express authorization of the District Court or the probation office or (2) participation in the Computer and Internet Monitoring Program ("CIMP"). *See* App'x at 14. CIMP permits the probation office, among other things, to install hardware or software allowing it to "monitor activities on any internet capable device"; to physically block ports on any internet-capable device; to conduct unannounced visits; and to demand passwords needed to access any such systems. App'x at 99-100. Additionally, Special Condition 7 delegates to the probation office the discretion to limit McAdam "to possessing one personal internet capable device." App'x at 14. The District Court explained at sentencing

that this condition was "necessary in order to protect the public from further crimes" and "to promote the rehabilitation of [McAdam]." App'x at 91.

McAdam contends that the District Court failed to "explain the rationale for" imposition of this condition, and that the rationale is not "self-evident on the record." McAdam Br. at 25. We disagree. Reviewing only for plain error, we conclude that McAdam has failed to demonstrate that any error in the District Court's admittedly brief articulation of the bases for the condition "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Dupes*, 513 F.3d at 343. The offense of conviction originated and was committed on the internet. McAdam initiated contact with the undercover agent on a website, continued to communicate with the undercover agent through that website and through a mobile social-media messaging application, and agreed to meet with a person he thought was a real minor through online communications. This record is sufficient to defeat any claim of plain error in imposing Special Condition 7.

However, the government concedes that the final sentence of Special Condition 7, which delegates to the probation office the discretion to limit McAdam to one internet capable device, must be vacated. *See* Gov't Br. at 56. We agree. We have held that "any special condition granting Probation

25

discretion to decide whether or not to restrict a supervisee to a single internet-connected device would constitute an impermissible delegation of the court's judicial authority."  *United States v. Kunz*, 68 F.4th 748, 767 (2d Cir. 2023).  We therefore amend the written judgment to strike the final sentence of Special Condition 7.

### C.    Special Condition 9

Special Condition 9 bars McAdam from accessing materials that "depict sexually explicit conduct, as defined in 18 U.S.C. §2256(2)," "including pictures, videotapes, films, magazines, books, telephone services, electronic media, computer programs, or computer services."  App'x at 14.  The parties assume that this condition imposes a complete ban on access to otherwise legal adult pornography; this Court has read identical language as imposing such a ban. *See, e.g.*, *United States v. Eaglin*, 913 F.3d 88, 93 & n.6 (2d Cir. 2019).  Because McAdam had a meaningful opportunity to object to this condition and failed to do so, we review the imposition of Special Condition 9 only for plain error. McAdam contends that the District Court "failed to provide any rationale for its imposition," McAdam Br. at 26, and asserts that the record does not support a finding that a total ban on adult pornography is appropriate because "adult

26

pornography did not play any substantial role in the offense conduct or in Mr. McAdam's personal history," McAdam Br. at 27.

"Pornographic materials receive full First Amendment protection when in the possession of ordinary adults, but may be regulated in the hands" of individuals under court supervision, in certain circumstances. *Eaglin*, 913 F.3d at 99 (citation modified). "[W]e conduct a more searching review in light of the heightened constitutional concerns presented" by conditions, like this one, implicating constitutional rights. *Id.* at 95 (citation modified); *see also United States v. Nash*, No. 23-6346, 2024 WL 3320861, at *2 (2d Cir. July 8, 2024) (summary order) ("[B]ecause a ban on accessing legal pornography implicates fundamental rights under the First Amendment, a special condition of supervised release limiting such access is subject to a more searching review." (citation modified)).

Prohibition of access to "legal adult pornography" is an "unusual and severe" condition. *Eaglin*, 913 F.3d at 94-95.

> [W]e have routinely rejected bans on possession of adult pornography as a condition of supervised release where the district court failed adequately to connect the need for that condition to the defendant's likelihood of recidivism or to another sentencing factor. Such bans must be supported on the record by detailed factual findings establishing that the proposed ban is reasonably related to the

27

sentencing factors set forth in 18 U.S.C. §3553(a) and that it is reasonably necessary to accomplish their objectives.

*Id.* at 99 (citation modified).

At the sentencing hearing, the District Court stated that Special Condition 9 is "necessary to promote the rehabilitation of the defendant" and that "[b]ased upon the nature of the instant offense, the Court finds special conditions 8 and 9 are the least restrictive conditions necessary in lieu of a complete internet ban to protect the public from further crimes of the defendant." App'x at 91. "[E]xclusive reliance on those generalized considerations is inconsistent with the requirement that the district court make an 'individualized assessment' as to each defendant when determining whether to impose a special condition." *Oliveras*, 96 F.4th at 314. The District Court was required to make an individualized assessment and "particularized findings" to ensure that the condition "does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *Sims*, 92 F.4th at 125 (citation modified). It did not do so. That constitutes error.

Nonetheless, we conclude that the rationale for imposition of Special Condition 9 is "self-evident in the record." *Betts*, 886 F.3d at 202 (citation modified). McAdam sent multiple pornographic images of himself and other

28

adults to the putative stepfather of the putative minor. *See* PSR at 4 ("The defendant sent the UC pictures of his penis, and wrote, 'hope she likes.'"); *id.* at 5 (pornographic picture); *id.* at 7, ¶ 8 (same); *id.* at 11, ¶ 14 (same); *id.* at 12, ¶ 19 (same); *id.* at 13, ¶ 23 (pornographic videos of another adult male). Moreover, McAdam stated that he planned to rely on showing pornography to the minor in order to prepare her for his sexual advances. *See id.* at 15-16, ¶ 35. And McAdam told the stepfather that he had enjoyed watching pornography fetishizing a stepdaughter-stepfather relationship before sharing another photograph of his own genitals. *Id.* at 12, ¶ 19.

We have upheld bans on adult pornography when such pornography played a role in the underlying offense. *See United States v. Simmons*, 343 F.3d 72, 82 (2d Cir. 2003) (upholding a ban on adult pornography because "there was a connection between [the defendant's] viewing and possessing sexually explicit material and his criminal behavior"); *United States v. Springer*, 684 F. App'x 37, 40 (2d Cir. 2017) (concluding that all that is needed to uphold such a ban is for the record "to establish a nexus between [the] pornography prohibition and the sentencing factors"). Though we do not take lightly this condition's impact on McAdam's fundamental First Amendment right, it is evident that there is a

connection between adult pornography and McAdam's offense, regardless of the District Court's lack of individualized assessment and articulation on the record.

We therefore affirm Special Condition 9.

**CONCLUSION**

For the reasons set forth above, we conclude that Conditions 14 and 15 were not properly imposed. Those conditions are hereby **VACATED**. The judgment is **AMENDED** to strike the final sentence of Special Condition 7. As amended, the imposition of Special Condition 7 is **AFFIRMED**, as is the imposition of Special Condition 9.

This matter is **REMANDED** to the District of Vermont for further proceedings consistent with this opinion. Although McAdam was sentenced by the Northern District of New York, the sentencing court transferred jurisdiction over McAdam's supervision pursuant to 18 U.S.C. §3605 to the District of Vermont, which in turn accepted the transfer. Section 3605 provides that "[a] court to which jurisdiction is transferred under this section is authorized to exercise all powers over the probationer or releasee that are permitted" under the relevant statutes. 18 U.S.C. §3605. It is therefore the District of Vermont that has authority to modify the conditions of supervised release as directed herein. On remand, "if the District

30

Court intends to impose" Conditions 14 and 15 in a new judgment, "it must convene a hearing in the presence of [McAdam] and must advise [him] that those conditions will be imposed" after conducting an individual assessment of the need for the conditions and articulating the reasoning for imposition of the conditions.[10] *Maiorana*, 153 F.4th at 315.  If the District Court chooses not to reimpose Conditions 14 and 15, "it may simply strike them from the judgment . . . without need to conduct a new sentencing proceeding."  *Id.*

---

[10] McAdam "has a right to a hearing, but he may elect to waive it.  The District Court may provide [McAdam] with written notice of the conditions it intends to impose on remand.  [McAdam] may elect *not* to demand a hearing regarding those conditions and insist on their pronouncement in his presence.  He may instead elect to argue his position in writing only, or to simply agree with the imposition of the conditions proposed."  *Maiorana*, 153 F.4th at 315 n.14 (emphasis in original).